902 F.2d 1009
 284 U.S.App.D.C. 183
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
MANHATTAN INSTITUTE OF MANAGEMENT, Appellant,
v.
Bruce S. GELB, in his capacity as Director of the United
States Information Agency, Appellee.
 No. 89-5440.
 United States Court of Appeals, District of Columbia Circuit.
 May 17, 1990.
 
 Before WALD, Chief Judge, and MIKVA and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the petition for review of an order of the United States District Court for the District of Columbia. The issues have been accorded full consideration by the Court, including oral argument, and occasion no need for a published opinion. See D.C.Cir. Rules 14(c), 14(d). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that the petition for review is hereby denied, and the District Court's order is hereby affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 This case arises on appeal of the district court's grant of summary judgment in favor of appellees. We affirm.
 
 BACKGROUND
 
 5
 In December 1985, appellant Manhattan Institute of Management ("MIM") applied to the United States Information Agency ("USIA") for status as a "sponsor" institution under the Exchange-Visitor Program, described in 22 C.F.R. Sec. 514. As part of its application, MIM provided documents showing that it had received from the Regents of the University of the State of New York "[p]ermission ... to operate MIM." Joint Appendix ("J.A.") at 105. On March 18, 1986, USIA granted MIM temporary sponsor designation. USIA's notification informed MIM that the designation would be
 
 
 6
 valid for one year from the date of this letter. After one year you may apply for permanent designation.
 
 
 7
 J.A. at 116. MIM never applied for permanent designation.
 
 
 8
 In November 1988, MIM requested and received 100 IAP-66 forms, its first additional request for forms since the 80 it had received upon originally gaining "temporary" designation. In May 1989, MIM requested 200 additional forms. This request apparently led USIA to review MIM's status. On June 16, 1989, USIA notified MIM that because MIM was "not an accredited institution, which is a requirement for designation," its designation as a sponsor was "cancelled effective upon receipt of this letter." J.A. at 129. USIA invited MIM to reapply "for program designation." Id. After being contacted by MIM's attorney, USIA wrote back to MIM on July 11, stating that the State of New York's "permission to operate" did not constitute accreditation and that MIM was a "foreign school." J.A. at 130. USIA gave MIM thirty days to "refute our findings ... to permit possible reinstatement of your program" Id. In his response, MIM's counsel argued that USIA had no authority to require evidence of accreditation, that MIM is not a foreign school, and that USIA denied MIM due process by not conducting a hearing before cancelling its sponsor designation. J.A. at 131-35.
 
 
 9
 On August 16, 1989, MIM obtained a Temporary Restraining Order ("TRO") permitting its continued operation through February 1990. On November 20, Judge Gesell granted USIA's motion for summary judgment and denied MIM's motion, thereby effectuating USIA's withdrawal of MIM's temporary designation as of February 1990.
 
 ANALYSIS
 
 10
 MIM's temporary status had lapsed when USIA cancelled its sponsorship designation. USIA's 1986 letter stated expressly that MIM's temporary designation "is valid for one year," and nothing in USIA's regulations governing the Exchange-Visitor Program supports MIM's expectation that its status would have greater duration. The regulations state only that temporary sponsors "may apply for permanent program status after one year," 22 C.F.R. Sec. 514.11(a)(8); the only reasonable interpretation of this provision is that the designation of temporary sponsors who do not apply for permanent status lapses.
 
 
 11
 MIM argues that it retained a constitutionally protected interest in its temporary sponsorship status after the first year expired because USIA supplied IAP-66 Forms in 1988; that contention, however, amounts to a claim of estoppel against the government, which we strongly disfavor. See Boulez v. C.I.R., 810 F.2d 209, 218 n. 68 (D.C.Cir.1987). USIA's actions in 1988 in no way relieved MIM of responsibility for ensuring that it maintained valid sponsor status after its first year of operation.
 
 
 12
 By 1989, therefore, MIM had no valid sponsorship status under the Exchange-Visitor regulations. Having failed to protect its designation by applying for permanent status, it lost its property interest in that designation. Consequently, MIM had no right to the extensive procedures afforded to sponsors whose designation USIA wishes to suspend or revoke. See 22 C.F.R. Sec. 514.17. USIA, therefore, could fairly demand that MIM either apply for permanent status or shut its doors.
 
 
 13
 The regulations governing the Exchange-Visitor Program make clear that when USIA is considering "[a]n application for program designation," it may require an intending sponsor to supply evidence of "accreditation." 22 C.F.R. Sec. 514.15(a). USIA's concern that MIM had not demonstrated its accreditation was, therefore, a legitimate one; MIM's failure to provide that evidence would be sufficient grounds for terminating its operations. By giving MIM thirty days to refute its claim of nonaccreditation, USIA afforded MIM as much procedural protection as any other prospective sponsor. MIM never provided the necessary documentation, however. The New York State Regents letter to which MIM's counsel referred in his attempt to refute USIA's finding was plainly no more than a license to operate. It described but did not evaluate MIM's curriculum and facilities, and made clear that MIM would not award degrees, see J.A. at 88-92; in academic parlance, therefore, it clearly did not constitute "accreditation."
 
 
 14
 In short, MIM had no cognizable interest in sponsorship status in June 1989. USIA provided MIM with an opportunity to refute its findings of nonaccreditation and to reapply for sponsorship status. MIM availed itself of neither of these avenues. The district court's judgment is therefore
 
 
 15
 AFFIRMED.